IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| Rene Cardoso, | ) | C.A. No. 2:16-cv-1058-PMD |
|---|---|---|
| Plaintiff, | ) | **PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE THE TESTIMONY AND REPORT OF OCCUPATIONAL HEALTH AND SAFETY CONSULTANT JASON E. HENTHORN** |
| vs. | ) | |
| Mitchell Mechanical LLC, | ) | |
| Defendant. | ) | |

Plaintiff Rene Cardoso hereby moves this Court for an order that prevents Defendant Mitchell Mechanical LLC from introducing at trial certain evidence from Jason E. Henthorn, who Defendant has designated as an expert witness. Specifically, Plaintiff seeks an order that excludes Henthorn's report and all testimony due to his use of opaque and inconsistent methodologies and his omission of his opinion regarding Defendant. In the alternative, Plaintiff request that the Court exclude (1) Henthorn's report because it is not the product of reliable principles and methods that Henthorn has reliably applied and because its risk of misleading the jury far outweighs its probative value; (2) any causation testimony Henthorn seeks to offer because it is irrelevant and will not help the trier of fact determine a fact in issue; and (3) any testimony Henthorn seeks to offer that is based on his "beliefs" and proprietary definitions because it would not be the product of reliable principles and methods.

**Background**

This case involves an injury at a multi-employer construction worksite in Charleston, South Carolina. Defendant Mitchell Mechanical is the only remaining defendant.

On July 16, 2013, individuals employed by Mitchell Mechanical performed elevated overhead work from a scissor lift. While attempting to secure a more-than-200-pound piece of HVAC equipment in an elevator lobby, they dropped the HVAC equipment onto Plaintiff Rene Cardoso's head. Cardoso suffered several injuries, including a traumatic brain injury and a spinal cord injury.

Through their attorneys, Mitchell Mechanical employed Jason Henthorn as an expert to provide general and opinion testimony on multiemployer worksites, classify the various employers on site, and provide causation testimony. Plaintiff now moves to exclude or limit Henthorn's testimony pursuant to Rules 702, 403, and 401 of the Federal Rules of Evidence.

## Legal Standards

Rule 702 of the Federal Rules of Evidence provides

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 403, in relevant part, permits the Court to exclude relevant evidence if its danger of misleading the jury substantially outweighs its probative value.

## Argument

Jason Henthorn received a B.S. degree in industrial hygiene from Ohio University in 1994, worked as a safety coordinator for an aluminum company from 1994 to 2002, and has been employed aby S-E-A, Ltd. as an occupational health and safety consultant since 2002. Henthorn has written reports, been deposed, and given trial testimony in numerous cases. To be sure, this motion does not seek to call Henthorn's qualifications as an expert into question. But

Henthorn's testimony should be excluded because it (1) fails to meet the reliability standards imposed by Rule 702(c) and (d); (2) presents an unwarranted danger of misleading the jury; and (3)—in the area of causation—would not help the jury understand the evidence or a fact at issue.

1. *Henthorn's Report and Associated Testimony Do Not Satisfy Rule 702(c) and (d) Because He Relies on Undefined Ideas and Applies Methodologies Inconsistently*

Henthorn's report is, as he admits, brief.[1] *See* Exhibit 1 (report of Jason Henthorn). The first two and a half pages of the six-page report consist of a bulleted list of materials he reviewed in preparing his report. Sections titled "Description of Incident and Discussion," "Discussion of Industrial Standards and References," and "Summary" are each about one page long.

The only industrial standard Henthorn discusses in the report with any detail is the Occupational Safety and Health Act of 1974's multi-employer citation policy. OSHA's multi-employer citation policy classifies employers as creating, exposing, correcting, or controlling. OSHA issued Directive CPL 02-00-124 (hereinafter "the Multi-Employer Citation Policy") to clarify this policy. Exhibit 2 (Multi-Employer Citation Policy, OSHA Directive CPL 02-00-124, Dec. 10, 1999).

The Multi-Employer Citation Policy expressly provides for a two-step process in determining whether an employer may be cited pursuant to the policy. "The first step is to determine whether the employer is a creating, exposing, correcting, or controlling employer" using the definitions provided in the directive. If an employer meets one of those definitions, "Step Two is to determine if the employer's actions were sufficient to meet" the employer's

---

[1] Plaintiff's counsel deposed Henthorn on June 30, 2017, at which time he admitted that his reports are brief when compared to other experts. Due to the July 7, 2017 deadline for motions in limine, transcripts of that deposition were unavailable at the time of filing. Quoted language denotes exact quotes as Plaintiffs' counsel recalls them and is sparingly used. To the extent Defendant disputes any characterization of Henthorn's deposition testimony, Plaintiff will supplement the Court with relevant excerpts from deposition transcripts once they are finalized.

"obligations with respect to OSHA requirements." Multi-Employer Citation Policy at X.A. Despite the fact that four of Henthorn's eight bulleted opinions either classify or rule out various entities as creating, exposing, correcting, or controlling employers, Henthorn failed to follow the prescribed steps for making these determinations.

OSHA defines a creating employer as "[t]he employer that caused a hazardous condition that violates an OSHA standard." Multi-Employer Citation Policy at X.B.1. Henthorn faithfully paraphrases this definition on page five of his report. In his report, however, Henthorn does not identify a violation of an OSHA standard.

During his deposition, Henthorn testified that he did not use OSHA's definition of creating employer when he identified Hart Land—the offsite, out-of-state staffing company that sent Plaintiff to the worksite—as the creating employer. Instead, he cobbled together a hodgepodge of unspecified industry standards to create an amorphous idea of what constitutes a creating employer. When pressed for the source of his proprietary definition, Henthorn was reticent to even call it a definition. He testified that various industry standards and his years of experience gave him the "belief" that Hart Land was the creating employer. An undefinable idea that gives rise to a belief is not a reliable principle or method, and years of experience is no substitute. Accordingly, Henthorn's testimony and report should be excluded because his opinions are not the "product of reliable principles and methods" as required Rule 702(c) of the Federal Rules of Evidence.

Henthorn's deposition testimony gives cause for concern for several additional reasons. First, he has faithfully applied OSHA's two-step process for classifying a creating employer on at least one previous occasion. Henthorn was retained as an expert in *Myers v. Hansen-Rice,*

*Inc.*, No. 2:12-CV-01036-TC (D. Utah).² Like the case at bar, *Myers* involved an injury at a multi-employer worksite. A food services provider hired a contractor to expand its facilities, and that contractor hired a subcontractor to assist with the work. The complaint alleged that a maintenance worker for the food service provider was injured when he fell from a ladder the subcontractor failed to properly secure.

In his *Myers* report, Henthorn discusses OSHA's multi-employer citation policy with the identical language he uses in his report in the case at bar. *Compare* Exhibit 1 at 5, *with* Exhibit 3 at 8–9. He also identifies both the hazardous condition and the OSHA regulation that it violates. Exhibit 3 at 8 ("29 C.F.R. 1910.26(c)(3)(iii) requires that a ladder base section be placed with secure footing"). Finally, he classifies the subcontractor, GEM, as the creating employer because their alleged placement of the unsecured ladder created the hazardous condition that violated an OSHA standard. *Id.* at 9.

In *Myers*, Henthorn followed one procedure. In the case before this Court, he followed another. This inconsistency "weighs heavily against reliability." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, 145 F. Supp. 3d 573, 582 (D.S.C. 2015), *order amended on reconsideration sub nom. In re: Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, No. MDL214MN02502RMG, 2016 WL 827067 (D.S.C. Feb. 29, 2016). Because Henthorn's selective use of OSHA's definitions and procedures appear to be results-oriented and not reliably applied, his testimony and report should be excluded. *See* Fed. R. Evid. 702(d).

---

² Of note, *Myers v. Hansen-Rice, Inc.* does not appear on the list of cases Henthorn provided along with his report for this case.

During his deposition testimony, Henthorn opined that—by his own definition—Defendant Mitchell Mechanical was a creating employer. Shockingly, this opinion does not appear in his report. When asked why he did not include this opinion in his report, Henthorn's response under oath was something to the effect of "I guess so that you would have to ask me." Setting aside the highly unusual nature of this admission, Henthorn's report appears to preclude the opinion that Defendant Mitchell Mechanical was a creating employer because it identifies Hart Land as *the* creating employer. The potential for multiple creating employers is not discussed in the Multi-Employer Citation Policy. It does not appear in Henthorn's report. It may be another one of Henthorn's beliefs. Even without Henthorn's blatant omission, this is yet another reason why his testimony and report should be excluded pursuant to Rule 702(c) and (d).

2. *Henthorn's Report Presents a Danger of Misleading and Confusing the Jury*

Even if the Court finds that Henthorn should be permitted to use his own definitions and beliefs to testify as to the various roles of the on-site employers on site, Plaintiff asks that the Court exclude his report pursuant to Rule 403.

Henthorn admittedly did not use OSHA's definitions in classifying who was a creating employer, but the report provides the OSHA definitions and framework for its multi-employer citation policy immediately before classifying various employers. Henthorn also admittedly omitted his opinion that Defendant Mitchell Mechanical was a creating employer from the report, which identifies Hart Land as *the* creating employer. Finally, the report does not identify any OSHA violation that has been committed. These things mystified Plaintiff's counsel and—with Henthorn's designation as an expert witness—will likely mislead the jury.

3. *Henthorn's Causation Opinion Should be Excluded On Relevance and Necessity Grounds*

Henthorn provides the following opinion on causation:

> Although the fall of the HVAC unit which struck Mr. C[a]rdoso was unexpected to him and Mitchell employees, Mr. C[a]rdoso placed himself in a location of increased risk, near an elevated manlift from which overhead work was being performed. Mr. C[a]rdoso's position in the vicinity of the manlift being utilized by Mitchell was the primary cause of Mr. C[a]rdoso's July 16, 2013 incident.

Exhibit 1 at 5–6.

At face value, this is not a causation opinion in the legal sense. In all incidents that involve injuries, if the injured person had been somewhere else, the same injury would not have occurred. Because this opinion does not truly touch on legal causation in this—or any—case, it should be excluded pursuant to Rule 401 of the Federal Rules of Evidence for lack of relevance.

Should the Court afford Henthorn's opinion a generous interpretation in the spirit of fairness usually reserved for pro se litigants, it essentially boils down to "He should have paid more attention." The Court should exclude testimony to this effect because it would allow an expert to impermissibly invade the province of the jury. *See United States v. Perkins,* 470 F.3d 150, 158 (4th Cir. 2006) ("[C]onclusory testimony that a company engaged in "discrimination," that a landlord was "negligent," or that an investment house engaged in a "fraudulent and manipulative scheme" involves the use of terms with considerable legal baggage; such testimony nearly always invades the province of the jury."). This is a classic comparative negligence question, and Henthorn has not relied on any technical or specified knowledge that would assist the jury in making this determination. Accordingly, Henthorn's opinion should be excluded pursuant to Rule 702(a) of the Federal Rules of Evidence.

## Conclusion

For the abovementioned reasons, Plaintiff asks the Court for an order excluding Henthorn's report and proposed testimony. In the alternative, Plaintiff request that the Court exclude (1) Henthorn's report because it is not the product of reliable principles and methods that Henthorn has reliably applied and its risk of misleading the jury far outweighs its probative value; (2) any causation testimony Henthorn seeks to offer because it is irrelevant and will not help the trier of fact determine a fact in issue; and (3) any testimony Henthorn seeks to offer that is based on his "beliefs" and proprietary definitions because it would not be the product of reliable principles and methods.

Respectfully submitted,

**YARBOROUGH APPLEGATE LLC**

s/ William E. Applegate IV
William E. Applegate IV, Federal ID 9261
David B. Lail, Federal ID 11228
291 East Bay Street, Floor 2
Charleston, SC 29401
(843) 972-0150 office
(843) 277-6691 fax

July 7, 2017
Charleston, South Carolina