Thomas P. MYERS, v. HANSEN-RICE, INC., GEM..., 2015 WL 11439367...

2015 WL 11439367 (D.Utah) (Expert Report and Affidavit)
United States District Court, D. Utah.

Thomas P. MYERS,
v.
HANSEN-RICE, INC., GEM Contractors, Inc., and Richard Radu.

No. 2:12-CV-01036-TC.
December 1, 2015.

**(Report or Affidavit of Jason E. Henthorn)**

**Case Type:** Vicarious Liability >> N/A
**Case Type:** Labor & Employment >> Safety & Health
**Case Type:** Labor & Employment >> Work Place Injury
**Jurisdiction:** D.Utah
**Name of Expert:** Charles A. Guinther, Jr., C.S.P.
**Area of Expertise:** Accident Analysis & Transportation >> Safety Accident Analysis & Transportation
**Area of Expertise:** Construction & Architecture >> Safety - Construction & Architecture

**Representing:** Defendant

**Name of Expert:** Jason E. Henthorn
**Area of Expertise:** Environmental >> Industrial Hygiene

**Representing:** Defendant

Dennis J. Conroy, Esq.

Silvester & Conroy L.C.

1371 East 2100 South, Suite 200

Salt Lake City, Utah 84105

Re: Preliminary Safety Evaluation

Date of Loss: July 25, 2008

Loss Location: Nicholas and Company

5520 West Harold Gatty Drive

Salt Lake City, Utah 84116

Thomas P. MYERS, v. HANSEN-RICE, INC., GEM..., 2015 WL 11439367...

S-E-A Project No. 163477

Dear Mr. Conroy:

S-E-A, Ltd. (S-E-A) was contacted regarding the above-referenced case and was requested to conduct a file review of materials provided by Silvester & Conroy L.C. and to form an opinion, if possible, as to the responsibilities associated with the July 25, 2008, incident involving Mr. Thomas P. Myers. The investigation was assigned to the direction of S-E-A Occupational Health and Safety Consultant Jason E. Henthorn as S-E-A Project No. 163477.

### S-E-A reviewed the following file materials provided by Silvester & Conroy L.C., pertinent to the above-referenced matter:

• Agreement Between Contractor and Owner of Hansen-Rice, Inc. (HRI) and Nicholas and Company (Nicholas) Facility Expansion - Salt Lake City, Utah, dated November 27, 2007.

• Subcontract Agreement of HRI and Golden Empire Manufacturing Contractors, Inc. (GEM) dated February 6, 2008.

• In the Third Judicial District Court, in and for Salt Lake County, State of Utah, Civil No. 120905002, *Thomas P. Myers v. Hansen-Rice, Inc., GEM Contractors, Inc., and Rick* [Richard] *Radu,* Amended Tier 3 Complaint for Damages and Jury Demand, dated July 23, 2012.

• Initial Disclosures of Mr. Radu and HRI, dated April 30, 2013.

• HRI's Answers to Plaintiff's First Set of Interrogatories, dated October 10, 2013.

• Mr. Radu's Answers to Plaintiff's First Set of Interrogatories, dated October 10, 2013.

• HRI's Answers to Plaintiff's Third Set of Interrogatories, dated August 4, 2015.

• Miscellaneous photographs (photographer and dates unknown).

• HRI job safety audits.

• HRI daily field reports of Mr. Radu.

• HRI daily field reports of Mr. John Clifford.

• HRI Fall Protection Work Plan.

• HRI Fall Protection Training.

• HRI Ladder and Stair Training.

• HRI ManBasket Standards, Policies, and Procedures.

2:16-cv-01058-PMD    Date Filed 07/07/17    Entry Number 73-3    Page 3 of 10

Thomas P. MYERS, v. HANSEN-RICE, INC., GEM..., 2015 WL 11439367...

- HRI Office Personnel Emergency Action Plans.

- HRI Safety Aspects for Construction.

- HRI Steel Erection Policy.

- HRI Management Accountability for Safety - 2008.

- HRI CM Manual, dated April 29, 2006.

- HRI Nicholas Foods Project Safety Orientation.

- HRI Project No. 07604 Emergency Response Plan.

- HRI Safety Manual.

- HRI Code of Safe Practice.

- HRI and Nicholas Foods safety meeting reports.

- Deposition testimony of Mr. Wesley Stockmann, dated March 27, 2014.

- Deposition testimony of Mr. Eldon Tryon, dated March 27, 2014.

- Deposition testimony of Mr. Jerry Turner, dated March 28, 2014.

- Deposition testimony of Mr. Oscar Vargas, dated April 23, 2014.

- Deposition testimony of Mr. Ted Gundersen, dated April 25, 2014.

- Deposition testimony of Mr. Robert Cooper, dated May 16, 2014.

- Deposition testimony of Mr. Radu, dated May 16, 2014.

- Deposition exhibits numbered 1 through 29.

- Deposition testimony of Mr. Thomas Myers, dated August 3, 2015.

- Deposition testimony and exhibits of Mr. Burke Hansen, dated September 10, 2015.

- Deposition testimony and exhibits of Mr. Francisco Davila, dated September 29, 2015.

- Deposition testimony of Mr. Brian McGillivray, dated October 22, 2015.

- Mr. George Hedley, Hedley Construction & Development Inc., report and attachments, dated October 27, 2015.

- Chris B. Nelson, M.S., A.I.S.C., Inc., report, dated February 2, 2015.

Thomas P. MYERS, v. HANSEN-RICE, INC., GEM..., 2015 WL 11439367...

**In addition, S-E-A reviewed the following:**

• U.S. Department of Labor, Occupational Safety & Health Administration (OSHA) Standard 29 Codes of Federal Regulations (CFR) 1926, *Safety and Health Regulations for the Construction Industry,* Subpart A, *General.*

• 29 CFR 1926, Subpart B, *General Interpretations.*

• 29 CFR 1926, Subpart C, *General Safety and Health Provisions.*

• 29 CFR 1926, Subpart D, *Occupational Health and Safety Provisions.*

• 29 CFR 1926, Subpart E, *Personal Protective and Life Saving Equipment.*

• 29 CFR 1926, Subpart M, *Fall Protection.*

• 29 CFR 1926, Subpart T, *Demolition.*

• 29 CFR 1926.16, *Rules of Construction.*

• 29 CFR 1910, *Occupational Safety and Health Standards,* Subpart B, *Adoption and Extension of Federally Adopted Standards.*

• 29 CFR 1910, Subpart D, *Walking-Working Surfaces.*

• 29 CFR 1910, Subpart H, *Hazardous Materials.*

• 29 CFR 1910, Subpart I, *Personal Protective Equipment.*

• AIHA 4-2005, *Health and Safety Requirements in Construction Contract Documents,* American Industrial Hygiene Association (AIHA), Fairfax, VA, 2005.

• *Advisory Committee on Construction Safety and Health Multi-Employer Citation Policy,* OSHA, Washington, DC, 1999.

• Standard Interpretations, *Clarification of Controlling Contractor Duties Under the Steel Erection Standard,* OSHA, Washington, DC, 2002.

• Standard Interpretations, *Fall Protection Requirements of Various Construction Standards,* OSHA, Washington, DC, 2001.

• Standard Interpretations, *Determining the Controlling Employer with the Role of Providing General Supervisory Authority When Using Multi-Employer Two-Step Analysis Citation Policy,* OSHA, Washington, DC, 2001.

• Standard Interpretations, *Duty of a Subcontractor to Cover Floor Holes in a Multi-Employer Work Site,* OSHA, Washington, DC, 2004.

- Standard Interpretations, *Fall Protection Requirements of Various Construction Standards,* OSHA, Washington, DC, 2001.

- Directives CPL 02-00-124, *Multi-Employer Citation Policy,* OSHA, Washington, DC, 1999.

- OSHA 3071, *Job Hazard Analysis,* OSHA, Washington, DC, 2002.

- OSHA 2254, *Training Requirements in OSHA Standards and Training Guidelines,* OSHA, Washington, DC, 1998.

- OSHA 2254, *Training Requirements in OSHA Standards and Training Guidelines,* OSHA, Washington, DC, 1998.

- OSHA 3124-12R, *Stairways and Ladders: A Guide to OSHA Rules,* OSHA, Washington, DC, 2003.

- ANSI A14.3, *Safety Requirements for Fixed Ladders,* American National Standards Institute (ANSI), New York, NY, 1999.

- ANSI A 14.2, *Safety Requirements for Portable Ladders,* New York, NY, 1998.

- ANSI/AIHA Z10-2005, *Occupational Health and Safety Management Systems,* AIHA, Fairfax, VA, 2005.

- ANSI/ASSE A10.39-1996 (R2005), *American National Standard for Construction and Demolition Operations Construction Safety and Health Audit Program,* American Society of Safety Engineers (ASSE), Des Plaines, IL, 2005.

- ANSI/ASSE A10.38-2000 (R2007), *Basic Elements of an Employer's Program to Provide a Safe and Healthful Work Environment,* ASSE, Des Plaines, IL, 2007.

- ANSI/ASSE A10.33-2011, *Safety and Health Program Requirements for Multi-Employer Projects,* ASSE, Des Plaines, IL, 2011.

- Dennis Burkes, "Reviewing and Reexamining OSHA's Multi-Employer Citation Policy," *Professional Safety,* August 2012, pp. 50-56.

- "Ladder Guidance Part of OSHA Fall Prevention Campaign," *Safety+Health,* August 9, 2013.

- J. Nigel Ellis, *Introduction to Fall Protection,* 3rd ed., American Society of Safety Engineers, Park Ridge, IL, 2001.

- J. Nigel Ellis, "Three Point Control," *Professional Safety,* November 2012, pp. 30-36.

- Thomas D. Schneid, *Corporate Safety Compliance, OSHA, Ethics, and the Law,* Taylor and Francis Group, LLC, Boca Raton, FL, 2008.

- OSHA Quick Card TM, *Portable Ladder Safety,* OSHA, Washington, DC.

- OSHA Quick Card TM, *Fall Protection in General Industry,* OSHA, Washington, DC.

- "Title R614: Labor Commission, Occupational Safety and Health," *Utah Administrative Code,* Utah Department of Administrative Services, Division of Administrative Rules, Salt Lake City, UT, 2015.

- Opinion of the Supreme Court of Utah, *Hughes General Contractors, Inc. v. Utah Labor Commission, Occupational Safety And Health Division,* Case No. 20120426, dated January 31, 2014.

- *International Building Code®,* International Code Council, Inc., Country Club Hills, IL, 2006.

## DESCRIPTION OF INCIDENT AND DISCUSSION

From the review of the aforementioned materials, Nicholas is located in Salt Lake City, Utah, and provides personalized food services, and has done so since 1939. This food service includes distribution, transportation, beverage and chemical services, consulting, training, etc. Nicholas services a six-state area. Mr. Thomas Myers, a Nicholas employee, was first hired as a maintenance technician during the month of May 2008. Mr. Myers reportedly possessed extensive experience in performing maintenance in facilities such as Nicholas.

HRI provides planning, design and engineering, design-build, and general contracting services and possesses significant experience and knowledge in steel and erection. Located in Nampa, Idaho, HRI provides a national service and is licensed in 50 states. HRI demonstrates their dedication to safety through their continuing OSHA Partnership Program. HRI indicates a range of their Experience Modification Rate (EMR) from 0.64, with 498,525 self-performance hours, to 0.89, with 270,564 self-performance hours. HRI indicates in 2006, 739,856 self-performance hours, with an EMR of 0.73. Generally, the EMR is a ratio of actual losses to expected losses. "High hazard" businesses typically have an EMR greater than 1.25.

On November 27, 2007, HRI as the Contractor and Nicholas as the Owner, entered into an agreement for the expansion of the Nicholas facility in Salt Lake City. In the agreement there is no provision specifying HRI's responsibility for overall construction site safety. On February 6, 2008, HRI entered into a subcontract agreement with GEM for a portion of the Nicholas expansion. GEM is located in Norfolk, Nebraska, and operates as a poured-concrete foundation and structure contractor.

During the expansion, Nicholas and its employees continued their daily business functions; however, the areas under construction were maintained separate from the areas utilized by Nicholas' daily function. The dock area, where the July 25, 2008, incident occurred, was partitioned with temporary walls and plastic sheeting. The primary purpose of such portioning was to prevent construction dust and debris from entering into the functioning areas of the Nicholas property.

Occasionally, Nicholas maintenance employees would be required to enter the partitioned area in order to access the mechanical loft. This mechanical loft was located upon a mezzanine above the loading docks. The Nicholas maintenance employees were not required to notify or receive permission from HRI in order to access the mechanical loft. Prior to the expansion, the mechanical loft was accessible by the utilization of fixed stairs and an industrial walking, working surface, as well as by roof access.

As part of the expansion, the fixed stairs and walking, working surface were removed so that on June 3, 2008, the existing concrete surface in this area could be broken up and removed. On at least one occasion after the removal of the stairs, Nicholas Facilities Director, Mr. Ted Gunderson, utilized a personnel scissors lift to access the mechanical loft. It is reported that it took him approximately five minutes to move the temporary wall and maneuver the lift into place so that he could then access the loft.

After the existing concrete had been removed, various portable ladders were reportedly placed on the earth, in order to access the mechanical loft. It is not known who possessed or positioned the ladders in order to access the loft. These various ladders were allegedly of various colors and utilized by electrical and/or maintenance contractors, as well as Nicholas maintenance employees. It is reported that on at least one occasion, HRI removed a portable ladder due to safety concerns. HRI reported that the portable ladders placed on the earth were tied at the top and staked and secured at the bottom. GEM was reported to have requested permission to remove a ladder on the earth on July 10, 2008, in order to prepare for and pour the concrete slab in this area.

Prior to Mr. Myers' July 25, 2008, fall from the portable ladder, Nicholas instructed their maintenance employees to use the personnel scissor lift to perform work that was above their heads and in order to access areas such as the mechanical loft. The HRI and GEM superintendents indicated that the personnel scissors lift could have been utilized to access elevations above the new concrete two-to-three days after the pouring had occurred.

During the early morning hours of July 25, 2008, Mr. Myers and his supervisor, Mr. Oscar Vargas, became aware of a problem with a portion of the Nicholas' critical refrigeration system and made the decision to access the mechanical loft using a portable ladder. This was in an attempt to bring the full refrigeration system back into operation. It is indicated that the portable ladder utilized by the Nicholas employees to access the mechanical loft was the top 20# section of an extension ladder. This section of ladder was reportedly secured toward its top by tie wire. The Nicholas employees ascended the ladder and entered the loft, at which time they reset a circuit breaker. Mr. Myers attempted to descend the portable ladder in order to view the fan to which they had just reset the circuit. It was at this time that Mr. Myers experienced a fall from the ladder, reportedly suffering injury.

It is not known who placed this portable ladder in position in order to access the mechanical loft, nor when the ladder was placed. The portable ladder was not placed with secure footing and it was labeled with, "This ladder section is not designed for separate use."

The HRI Superintendant, Mr. Radu, was in the loading dock area, which was under construction during the work days from July 10 until July 25, 2008. Mr. Radu reportedly did not see any portable ladder placed on the new concrete prior to Mr. Myers' incident. Mr. Radu walked the site regularly to observe the subcontractors' work, and to observe potential safety issues and violations. He authored daily reports in regard to the Nicholas expansion project and his observations. The HRI Daily Reports for the work days from July 10 until July 25 reflect that Mr. Radu conducted daily walkthroughs in the loading dock area where GEM was working and had previously poured the new concrete floor beneath the mechanical loft.

HRI possessed policies and procedures, created daily field reports, and held safety meetings in demonstration of their responsibility and dedication to workplace safety prior to July 25, 2008. The HRI Safety Program included site-specific safety orientation, weekly subcontractor and employee safety meetings, and jobsite safety audits.

Nicholas owned and operated the Salt Lake City facility. The facility was primarily regulated by OSHA 29 CFR 1910, *Occupational Safety and Health Standards*. The work being performed by HRI was primarily regulated by OSHA 29 CFR 1926, *Safety and Health Regulations for the Construction Industry*. The State of Utah administers a State OSHA Plan. While Utah adopts most federal standards, the State periodically supplements federal standards with additional requirements. These supplements are found in the Utah Administrative Code. It appears that the Utah OSHA does not provide for the use of the Federal Agency's Multi-Employer Citation Policy.

From October 20 until November 3, 2008, the Utah Labor Commission, Division of Occupational Safety and Health, performed an inspection as a result of the July 25, 2008, incident at the Nicholas facility located on Gatty Road in Salt Lake City. Nicholas received two citations, with the first having Items 1a and 1b. Citation 1 was a "Serious Citation," indicating violations of 29 CFR 1910.26, *Portable Metal Ladders.* Citation 2 was an "Other Citation of Utah Administrative Code." Citations were issued due to Nicholas' failure to report a serious injury within eight hours of the occurrence, and as a result of Mr. Myers' fall from the portable ladder section. There was no Utah Labor Commission inspections directed toward HRI, nor were there any citations issued to HRI as a result of Mr. Myers' fall on July 25, 2008.

## DISCUSSION OF INDUSTRIAL STANDARDS AND REFERENCES

The Occupational Safety and Health Act (OSH Act) of 1970 requires each "employer" to furnish to each of his "employees" a place of employment, that is free of recognized hazards that are likely to cause death or serious physical harm. Furthermore, the OSH Act requires that each employee comply with occupational safety and health standards, rules, and regulations.

Employers must assess their workplace in order to determine if hazards are, or likely to be present. Employees must be properly trained regarding the hazards their jobs may require them to interact with. Nicholas and its employees were required to determine which means and methods they intend to utilize to perform their work, and further apply the appropriate engineering controls, administrative controls, and/or the use of personal protective equipment.

OSHA 29 CFR 1910.26(c)(3)(iii) requires that a ladder base section be placed with secure footing and was found to be violated by Nicholas, as their employees utilized a portable ladder that lacked proper footing, which was the primary cause of Mr. Myers' fall. Furthermore, Messrs. Myers and Vargas had both utilized this ladder without concern for their safety. Mr. Myers attempted to again utilize the ladder without notifying Nicholas of an unsafe condition. Mr. Myers did not comply with the Nicholas policy and practice of utilizing a personnel scissors lift in order to perform his assigned duty at this elevation. Also, Mr. Myers did not utilize the roof access to leave the Mechanical Loft Room. These actions by Messrs. Myers and Vargas resulted in Nicholas also being found to have violated 29 CFR 1910.26(c)(2)(vii), in which ladders having defects are to be marked and taken out of service until repaired by either a maintenance department or the manufacturer.

On a construction site, a general contractor is not responsible for every accident. In order to decide responsibility of multi-employer construction sites, one must perform an analysis consistent with the OSHA Multi-Employer Citation Policy.

Could one employer on a "multi-employer worksite" be liable for violations committed by another employer? This is one of the most vexing issues dealt with under the OSH Act. OSHA Directives CPL 02-00-124, *Multi-Employer Citation Policy,* was created to clarify the Agency's Multi-Employer Citation Policy. On multi-employer worksites, throughout all industry sectors, more than one employer may be responsible for a hazardous condition that violates OSHA standards. To determine whether one or more employers may be responsible, a two-step process must be followed. First, one must determine the role of the employer. Was the employer classified as a "controlling, creating, exposing, or correcting" employer? Only Exposing employers are responsible for violations of the General Duty Clause. Second, one must determine if the employers' actions were sufficient to meet their obligations with respect to the OSHA requirements. The extent of the actions of an employer varies based upon their category of classification. OSHA recognizes that the extent of the measures that a controlling employer must exercise its duty of reasonable care to prevent and detect violations is less than what is required of an employer with respect to protecting their own employees.

Thomas P. MYERS, v. HANSEN-RICE, INC., GEM..., 2015 WL 11439367...

The hierarchy of liability for providing a safe place of employment, on a multi-employer worksite greatly depends on which classification, or combination of classifications, of employer each entity falls within:

1. The "creating employer" is the employer that created the hazardous condition that is in violation of an OSHA standard. A creating employer can be held responsible in various situations, even if the only employees exposed to the hazard are those of other employers.

2. The "exposing employer" is one whose own employees are exposed to the hazard.

3. The "correcting employer" is one that has the authority, responsibility, and expertise to correct a hazard.

4. The "controlling employer" is one who has "general supervisory authority" over the worksite.

## SUMMARY

Based upon the review of the relevant materials, it is the opinion of S-E-A, within a reasonable degree of professional certainty, that:

• Nicholas, as the controlling, exposing, and correcting employer, as well as Mr. Myers, were responsible for his safety upon the site, as he was an employee of the owner while working on the site.

• Nicholas and Mr. Myers were governed by 29 CFR 1910, OSHA standards applicable to general industry and were not part of the Nicholas Expansion Construction Project governed by 29 CFR 1926, OSHA standards applicable to the construction industry.

• Mr. Myers' conduct, use of the ladder, and failure to comply with the Nicholas policy and practice of utilizing a personnel scissors lift when required to work overhead or access this elevation was the primary cause of Mr. Myers' July 25, 2008, incident.

• Due to the nature of the work being performed by the Nicholas employees, the fall hazards were both obvious and apparent to both Nicholas and Mr. Myers. Furthermore, the fall hazards were apparent to Nicholas and their employees, as demonstrated by their administrative practice of utilizing personnel lifts.

• GEM would be classified as the creating employer if they did place the portable ladder in the manner as it was at the time of Mr. Myers' incident, as it is alleged.

• In regard to Mr. Myers' July 25, 2008, incident, HRI would not be classified as the controlling, creating, exposing, or the correcting employer and, therefore, HRI was not responsible for Mr. Myers' injuries on July 25, 2008.

• In regard to the construction activities, HRI, as a controlling employer, met their duty and responsibilities for the overall construction general safety.

• HRI was responsible for and demonstrated their responsibility for the general construction safety upon the site where Mr. Myers, a Nicholas employee, was injured on July 25, 2008. HRI neither demonstrated nor possessed control over details, means, or methods utilized by GEM, Nicholas and their employees, including Mr. Myers.

Thomas P. MYERS, v. HANSEN-RICE, INC., GEM..., 2015 WL 11439367...

- Consistent with industrial standards, references and guidelines, HRI possessed policies and procedures, created daily field reports, and held safety meetings in demonstration of their responsibility and dedication to workplace safety prior to July 25, 2008.

- Consistent with industrial standards, references and guidelines, The HRI Safety Program included site-specific safety orientation, weekly subcontractor and employee safety meetings, and jobsite safety audits.

- The International Building Code is applicable to the built environment.

S-E-A hereby certifies the opinions and conclusions expressed herein have been formulated within a reasonable degree of professional certainty. They are based upon the application of reliable principles and scientific methodologies to all of the facts known by S-E-A when this report was issued, as well as knowledge, skill, experience, training, and/or education. Should additional information be discovered, S-E-A reserves the right to appropriately amend or augment these findings.

This concludes S-E-A's investigation into this matter. Should you have any additional questions, please do not hesitate to contact our office at your earliest convenience.

End of Document                                                                 © 2017 Thomson Reuters. No claim to original U.S. Government Works.